### In re ENERGY CONVERSION DEVICES, INC., et al.,[1] Debtors.

### No. 12–43166.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

June 11, 2012.

1. The Debtors in these jointly administered cases are Energy Conversion Devices, Inc. (Case No. 12–43166) and United Solar Ovonic LLC (Case No. 12–43167).

Daniel J. Weiner, Bloomfield Hills, MI, Judy B. Calton, Honigman Miller Schwartz & Cohn LLP, Aaron M. Silver, Robert B. Weiss, Detroit, MI, for Debtors.

John A. Simon, Judy A. O'Neill, Tamar Dolcourt, Detroit, MI, Robert D. Gordon, Birmingham, MI, for Creditor Committees.

*AMENDED* [2]

OPINION REGARDING THE MAY 31, 2012 MOTIONS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (1) TO ADJOURN SOLICITATION OF VOTING ON THE DEBTORS' SECOND AMENDED PLAN OF LIQUIDATION, AND (2) TO TERMINATE THE DEBTORS' EXCLUSIVITY PERIOD UNDER SECTION 1121(D) OF THE BANKRUPTCY CODE

THOMAS J. TUCKER, Bankruptcy Judge.

These jointly-administered cases came before the Court for hearing on June 6, 2012, on several motions. The hearings included an expedited hearing on two motions filed on May 31, 2012 by the Official Committee of Unsecured Creditors (the "Committee"), entitled (1) "Motion of the Official Committee of Unsecured Creditors for a Limited Adjournment of Solicitation of Voting on the Debtors' First Amended Joint Plan of Liquidation" (Docket # 613); and (2) "Motion of the Official Committee of Unsecured Creditors to Terminate the Debtors' Exclusivity Period Pursuant to Section 1121(d) of the Bankruptcy Code" (Docket # 617) (collectively, the "Motions"). For the reasons stated in this opinion, the Court will deny both of the Committee's Motions.

## I. Introduction

On February 14, 2012, the Debtors, Energy Conversion Devices, Inc. ("ECD") and United Solar Ovonic LLC ("USO"), filed voluntary petitions for relief under Chapter 11. On May 31, 2012, Debtors filed a combined plan and disclosure statement in a document entitled "Second Amended Joint Plan of Liquidation of Energy Conversion Devices, Inc. and United Solar Ovonic LLC" (Docket # 611, "Debtors' Second Amended Plan"). That same day, the Court entered an order granting preliminary approval of the Debtors' Disclosure Statement. (Docket # 612).[3]

Later that day, the Committee filed the Motions. The Committee seeks a termination of the Debtors' exclusivity period under 11 U.S.C. § 1121, so that the Committee may file a competing Plan. The Committee wants to present its competing Plan to creditors for voting, and to the

---

2. This amended opinion amends the opinion filed on June 7, 2012 (Docket # 683), to correct some minor typographical errors; no substantive changes are made.

3. These events followed a hearing on disclosure statement issues, as well as other matters, held on May 30, 2012.

Court for consideration, at the same time Debtors' Second Amended Plan is presented. And whether the Court grants or denies the Committee's motion on exclusivity, the Committee also seeks a delay in Debtors' right to solicit votes regarding its Second Amended Plan, to give the Committee more time to decide whether to recommend that its creditor constituents accept or reject Debtors' Second Amended Plan, and to communicate any such recommendation to the creditors before they vote.

Both of the Committee's Motions are opposed by (1) the Debtors; (2) the Ad Hoc Consortium of Noteholders; and (3) the Official ECD Creditors Sub–Committee, all of whom filed timely written objections. The Court held a lengthy hearing on the Committee's Motions on June 6, 2012, and then took them under advisement. This opinion explains, in a somewhat abbreviated fashion,[4] why the Court is denying both of the Committee's Motions.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and these contested matters under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). These contested matters are core proceedings under 28 U.S.C. §§ 157(b)(2)(L) and 157(b)(2)(O). These matters also are "core" because these matters are "created or determined by a statutory provision of title 11." *See generally Allard v. Coenen (In re Trans–Industries, Inc.)*, 419 B.R. 21, 27 (Bankr. E.D.Mich.2009).

## III. Discussion

### A. The Committee's motion to terminate exclusivity

#### 1. The law

Under § 1121(b) of the Bankruptcy Code,

> Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

11 U.S.C. § 1121(b). Under § 1121(c), the general rule is that:

> Any party in interest, **including** the debtor, the trustee, **a creditors' committee,** an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, **may file a plan if and only if—**
>
> (1) a trustee has been appointed under this chapter;
>
> (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
>
> (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

11 U.S.C. § 1121(c)(emphasis added).

In this case the 120–day mark after the petition date is June 13, 2012; the 180–day mark is August 13, 2012. The Debtors filed the first version of their Plan on May 23, 2012,[5] well within the 120–day exclusivity period. Debtors' Second Amended Plan was filed on May 31, 2012, also well within the 120–day period. As discussed

---

**4.** The abbreviated style of this opinion is made necessary by what the Court and the parties perceive to be the need for a very quick decision on the Committee's Motions. While this opinion may not expressly discuss every argument or point made by the parties,

the Court has carefully considered all of the written and oral arguments made by the parties who supported and opposed the Committee's Motions.

**5.** Docket # 562.

during the June 6 hearing, Debtors have proposed a confirmation process that would include a deadline for voting on Debtors' Second Amended Plan to be completed on July 12, 2012 (which would also be the deadline for filing objections to confirmation), and a confirmation hearing on July 18, 2012. This schedule would give the Debtors an opportunity to confirm a plan well within the 180–day exclusivity period. It would also give the Debtors an opportunity to confirm their Second Amended Plan before the July 30, 2012 deadline for confirmation that is contained in the Plan Support Agreement [6] entered pre-petition between the Debtors and the Ad Hoc Consortium of Noteholders, discussed below.

■ Section 1121(d)(1) provides that "the court may for cause reduce or increase" the debtor's 120–day and 180–day exclusivity periods. 11 U.S.C. § 1121(d)(1). This section "grants great latitude to the Bankruptcy Judge in deciding, on a case-specific basis, whether to modify the exclusivity period on a showing of 'cause.'" *Geriatrics Nursing Home, Inc. v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home, Inc.)*, 187 B.R. 128, 132 (D.N.J.1995) (citations omitted).

■ The Bankruptcy Code does not define the word "cause" as used in § 1121(d)(1). As all the parties note, courts have developed a list of nine factors to consider in deciding whether to extend or terminate a debtor's statutory period of exclusivity:

1. the size and complexity of the case;
2. the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
3. the existence of good faith progress toward reorganization;
4. the fact that the debtor is paying its bills as they become due;
5. whether the debtor has demonstrated reasonable prospects for filing a viable plan;
6. whether the debtor has made progress in negotiations with its creditors;
7. the amount of time which has elapsed in the case;
8. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
9. whether an unresolved contingency exists.

*In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr.E.D.Mich.1997).

■ In enacting 11 U.S.C. § 1121, Congress intended "to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan." *In re Clamp–All Corp.*, 233 B.R. 198, 207–08 (Bankr.D.Mass.1999).

"It was intended that at the outset of a Chapter 11 case a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests." *In re Texaco, Inc.*, 81 B.R. 806, 809 (Bankr. S.D.N.Y.1988) (citing H.R.Rep. No. 595, 95th Cong., 2d Sess. 221–22, reprinted in 1978 U.S.C.C.A.N. 5787). The exclusivity period gives the debtor the ability to stabilize its operations and the opportunity to retain control over the reorganization process. The adoption of a limited period of exclusivity also assures speed by motivating the debtor to be more fair and reasonable in its negotiations with creditors, because the debtor

---

**6.** Docket # 167.

knows that the bargaining leverage of exclusivity will soon end.

*Id.* at 207; *see also Geriatrics Nursing Home, Inc. v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home, Inc.),* 187 B.R. 128, 131 (D.N.J.1995). In enacting § 1121, Congress balanced the competing interests of the debtor and creditors. *Geriatrics Nursing Home,* 187 B.R. at 131–32. Therefore, "cause" to reduce the exclusivity period should only be found in extraordinary circumstances. *See In re Fountain Powerboat Indus., Inc.,* No. 09–07132–8, 2009 WL 4738202, at *7 (Bankr. E.D.N.C. Dec. 4, 2009) (finding only two published cases where courts have found "cause" to reduce the exclusivity period).

■ "As a general rule, the party seeking to terminate or modify a debtor's exclusivity period bears the burden of proof since it is the moving party who seeks to change the status quo.... [M]ost cases state that the standard of proof for such motions is a heavy one[.]" *Dow Corning,* 208 B.R. at 663; *see also Geriatrics Nursing Home,* 187 B.R. at 132 ("A party in interest which seeks to establish 'cause' to terminate the exclusivity period 'bears a heavy burden'") (quoting *In re Interco, Inc.,* 137 B.R. 999, 1000 (Bankr.E.D.Mo. 1992)); *In re Interco, Inc.,* 137 B.R. 999, 1000 (Bankr.E.D.Mo.1992)("A party requesting an immediate termination of the exclusive period as originally authorized by statute or as it may have been extended by the Court, bears a heavy burden.") (citing *In re Texaco, Inc.,* 81 B.R. 806, 812 (Bankr.S.D.N.Y.1988)).

■ Where creditors and parties in interest argue for termination of the exclusivity period on the basis that "they [are] prepared to offer more favorable plans if the court were to terminate the exclusivity period," that does not constitute "sufficient cause to cut short the debtor's window of opportunity opened by Congress 11 U.S.C.

§ 1121(b) and (c)." *Geriatrics Nursing Home,* 187 B.R. at 134.

### 2. Application to this case

■ The Court concludes that the Committee has not met its burden of demonstrating "cause" to terminate Debtors' exclusivity, for the following reasons:

1. The Committee wants the Court to terminate exclusivity so it can file an alternative plan of liquidation (one not involving substantive consolidation of the two Debtors' estates, as the Debtors' liquidation plan does). But the Committee has not yet decided whether it will even recommend such an alternative plan to its constituents (the unsecured creditors of both Debtor estates), or advocate for confirmation of it. Instead, it is quite possible that the Committee ultimately will decide to recommend **the Debtors' Second Amended Plan** to its constituents, and advocate for confirmation of that Plan.

2. What the Committee seeks to do—file and send out for voting a plan that the Committee does not advocate (at least not yet, and perhaps not ever)—places it at odds with a body of the Committee's constituents that likely hold the majority of the non-insider unsecured debt owed by the two Debtors combined. These are the three ECD creditors who make up the Ad Hoc Consortium of Noteholders, who oppose the Committee's Motions. These ECD creditors hold debt that is roughly 72% of the total amount of the debt owed by the Debtor ECD, and roughly 57–63% of the total estimated, liquidated, non-insider debt owed by the two Debtors combined. Moreover, the Official ECD Creditors Sub–Committee of the Committee, which the Committee formed to represent the interests of ECD creditors in situations of conflict with the interests of USO creditors, also opposes the Committee's Motions. In doing so, the Sub–Committee

represents the ECD creditor body, and the ECD creditor body, in turn, represents roughly 80–90% of the amount of total non-insider claims against the two Debtors combined.[7] These facts do not mean that the Committee has acted improperly in seeking to terminate exclusivity and file a competing plan. And certainly, the Committee has a duty to represent the interests of all of the unsecured creditors in both cases, not just the ECD creditors. But these facts do weigh heavily against finding "cause" to terminate exclusivity and to allow the Committee to pursue this course, since they show that the Committee is acting against the wishes of a substantial body of unsecured creditors in these cases.

3. The Committee's justifications for setting out on this very unusual course—to file and send out for voting a plan that the Committee does not advocate (at least not yet, and perhaps not ever)—are inadequate. First, the Committee argues that when the creditors vote on the Debtors' Second Amended Plan, they should have a choice between two competing plans of liquidation (the Debtors' substantive consolidation plan and the Committee's plan that would not include substantive consolidation). Second, the Committee argues that if only the Debtors' Second Amended Plan goes forward at this time, and the Debtors fail to win confirmation of that plan, then the Committee would have to file its competing plan and start a new solicitation and confirmation process. This type of serial-confirmation process approach, compared to a simultaneous/competing plan approach, is more expensive and involves more delay in concluding

these Chapter 11 cases, according to the Committee.

The problem with these justifications for the Committee's proposed course, however, is that they are directly contrary to the very concept of Debtor-exclusivity that Congress chose to adopt for Chapter 11 cases, when it adopted Code § 1121. Congressional intent obviously was that the Chapter 11 debtor should normally have the first and exclusive chance to propose and to confirm a plan. Congress made the policy choice that this was the better approach to Chapter 11 cases. The Committee's arguments about how creditors should have a choice of plans to vote on, simultaneously; and how the serial approach involves more expense and delay, described above, are simply at war with the policy choice that Congress made in § 1121.

4. The Committee's other primary justification for the very unusual course it seeks to take is what the Committee views as a very compressed plan confirmation process, imposed on these cases by the July 30, 2012 confirmation deadline contained in the Plan Support Agreement. That pre-petition agreement (the "PSA"),[8] between the Ad Hoc Consortium of Noteholders and the Debtors, contains provisions that at least arguably, the Committee fears, would permit the Ad Hoc Consortium of Noteholders to withdraw its support for the Debtors' Second Amended Plan (and, as part of that, for substantive consolidation), if the Debtors' Second Amended Plan is not actually confirmed on or before July 30, 2012. The Committee very much wants to avoid such an occurrence, because it may yet decide that it supports confirmation of the Debtors' Sec-

---

7. The numbers in this paragraph are taken from, or calculated from, the Ad Hoc Consortium of Noteholders' objection (Docket # 654) at 2 ¶ 2 (citing Debtors' liquidation analysis).

8. A copy of the PSA is on file at Docket # 167.

ond Amended Plan. But, the Committee argues, the confirmation process that is necessary in order to meet a July 30, 2012 confirmation deadline is too compressed and expedited to enable the Committee to properly evaluate and decide, with sufficient comfort, what to recommend to its constituents. The Committee needs more time and information, it says, in order to properly evaluate the merits of the Debtors' Second Amended Plan and compare that to a plan not involving substantive consolidation. In effect, the Committee wants to terminate the Debtors' exclusivity because the Debtors are moving *too quickly* toward confirmation of a plan.[9]

This justification is too weak to establish cause, or to weigh in favor of finding cause, to terminate the Debtors' initial exclusivity period. And the Committee does *not* claim that it will not have sufficient information by the time objections to confirmation of the Debtors' plan are due and at the time of the confirmation hearing. If the Committee believes, at those times, that Debtors' Second Amended Plan is inferior to the type of alternative plan the Committee wants to launch, then the Com-

mittee can object to and actively oppose confirmation of the Debtors' plan. And if it is successful in such opposition, the Committee will be able to propose its competing plan at that time.

 The overriding principle under § 1121, which applies here, is that normally the Chapter 11 Debtor gets the first clean shot at proposing and confirming a plan. While the Committee has made interesting arguments, the Court concludes that the Committee has not met its heavy burden of showing that the Debtors in this case should not get that first shot. Accordingly, the Committee's motion to terminate exclusivity will be denied.[10]

**B. The Committee's motion to delay solicitation of votes on Debtors' Second Amended Plan**

 The Committee's other motion, as modified by the discussion during the June 6 hearing, seeks to delay the Debtors' proposed schedule for the confirmation process on Debtors' Second Amended Plan. The delay sought is shown by this chart:

| | Debtors propose: | Committee seeks: |
|---|---|---|
| Mail out solicitation package: | June 12, 2012 | June 19, 2012 |
| Voting and objection deadline: | July 13, 2012 | July 20, 2012 |
| Confirmation hearing begins: | July 18, 2012 | July 25, 2012 |

As noted earlier in this opinion, the Committee wants to preserve the possibility of the Court confirming the Debtors' plan on or before July 30, 2012. As the Committee's counsel made clear during the June 6 hearing, therefore, the Committee does not want the schedule to run so late

as to risk missing the July 30 deadline. So the delay requested by the Committee's motion is of limited duration, as indicated in the chart above.

The Court will deny the Committee's motion, for the following reasons. First,

---

**9.** The much more common complaint heard when a Committee seeks to terminate the debtor's exclusivity, of course, is that the Debtor is *not moving quickly enough* toward confirmation of a plan.

**10.** In reaching its decision, the Court has considered the nine "cause" factors set forth in the *Dow Corning* case, quoted above. The Court concludes that in this case, *none* of the nine factors weighs in favor of terminating the Debtors' exclusivity early, as requested by the Committee.

the delay sought by the Committee is unlikely to make a meaningful difference for the Committee's stated purpose. That purpose is to enable the Committee to know more before it makes a recommendation to its creditor constituents of whether to vote for Debtors' plan. The Committee hopes by the requested delay to know more about the universe of claims against the Debtors' estates (because the claims bar date in these cases is June 21, 2012, and because warranty claims may be reduced by asset sales that the Debtors are expected to make in late June); and to know more about the value of the estate assets (again because of asset sales that are expected to occur in late June). But under *the Debtors'* proposed schedule, the deadline to return ballots on the Debtors' Second Amended Plan is not until July 12. And the parties have agreed that the solicitation package that will shortly go out to the creditors will contain a statement that the Committee will (or may) be sending the creditors a letter making a recommendation about the Debtors' plan. So those creditors who are interested in having the Committee's recommendation can wait to send in their ballots until as late as July 9 or 10 before doing so. This gives the Committee until at least early July to send a letter of recommendation to the creditors. The minimal additional time that the Committee would have to send such a letter under the delayed schedule is unlikely to make any meaningful difference in the Committee's knowledge level.

Second, and perhaps more important, under the Committee's delayed schedule, the confirmation hearing on Debtors' Second Amended Plan would not begin until July 25, 2012. In the Court's view, that is too late—too close in time to July 30—to insure that a contested confirmation hearing (which might require an evidentiary hearing) can be completed in time to confirm a plan by July 30 (if the Court's

decision is to confirm rather than deny confirmation). So the effect of the delay the Committee seeks is inconsistent with the Committee's goal of keeping a schedule that will make it likely that the July 30 confirmation deadline can be met.

For these reasons, the Committee's delay motion will be denied.

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter a separate order denying both of the Committee's Motions.